UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION


FILED
MAR 30 2010

******************************************************************

| | | |
|---|---|---|
| SUE DEFENDER, | * | CIV. 08-1022 |
| | * | |
| Plaintiff, | * | |
| | * | MEMORANDUM OPINION |
| -vs- | * | AND ORDER |
| | * | |
| UNITED STATES DEPARTMENT OF | * | |
| THE INTERIOR; BUREAU OF INDIAN | * | |
| AFFAIRS, | * | |
| | * | |
| Defendants. | * | |

******************************************************************

## INTRODUCTION

In 1988, plaintiff and Edward Defender ("Edward" or "decedent"), a member of the Standing Rock Sioux Tribe, were married in the state of New Mexico. On November 7, 1996, Edward executed a will devising his entire estate, including all of his trust property, to his then wife, plaintiff. The will was executed on the Standing Rock Sioux Indian Reservation in Ft. Yates, North Dakota. On March 11, 1998, plaintiff and Edward were divorced in the state of New Mexico. After his divorce, Edward never executed a new will. Edward died on August 27, 1999, in South Dakota. At the time of his death, Edward owned Indian trust or restricted real property on the Standing Rock, Crow Creek, and Pine Ridge Indian Reservations. Decedent was survived by three half-siblings, all members of the Standing Rock Sioux Tribe. His ex-wife, the plaintiff, also survived him.

Administrative Law Judge William S. Hebert conducted the initial probate proceedings and approved the decedent's will. Judge Herbert accepted plaintiff's status as an Eastern Cherokee Indian based upon the statement in decedent's will and her uncontested testimony at the probate hearing. On September 28, 2000, Judge Herbert issued an order awarding plaintiff

the decedent's real property held in trust on the Standing Rock, Crow Creek, and Pine Ridge reservations.

The Superintendent of the Standing Rock Agency ("Superintendent") and decedent's sister, Bridget, filed separate petitions for rehearing, arguing that plaintiff was non-Indian and thus ineligible to receive Indian trust or restricted real property on the Standing Rock Reservation. Judge Herbert issued orders denying both the Superintendent and Bridget's request for a rehearing. Both the Superintendent and Bridget appealed to the Board of Indian Appeals ("Board").

On August 22, 2001, the Board vacated Judge Herbert's orders as to both the Superintendent and Bridget and remanded the case back to Judge Herbert. On remand, the case was assigned to Indian Probate Judge George Tah-bone. On December 25, 2005, Judge Tah-bone issued an Order of Modification, ruling that, despite plaintiff's claims of Indian descent, she was not descended from a member of a federally recognized tribe. Judge Tah-bone's finding that plaintiff was not an "Indian" meant that, under Section 2 of the Standing Rock Sioux Reservation Inheritance of Trust or Restricted Land ("SRHLA" or "Standing Rock Heirship Lands Act"), she was precluded from receiving the decedent's interest in the Standing Rock Reservation land. Judge Tah-bone ruled, however, that despite plaintiff's non-Indian status, she could receive a devise of the decedent's Standing Rock Indian trust land if the Tribe elected not to pay plaintiff the fair market value of the land in question. Additionally, Judge Tah-bone determined that decedent died without heirs, which meant his real property interest in the land on the Standing Rock Reservation would escheat to the tribe under section 3(a)(6) of the SRHLA.

The Bureau of Indian Affairs ("BIA") sought a rehearing on Judge Tah-bone's Order of Modification. On August 10, 2006, Administrative Law Judge Richard Reeh dismissed the petition on procedural grounds, finding that the BIA's petition for rehearing was a successive petition for rehearing, which is not allowed under 43 C.F.R. §4.241(f). The Superintendent and the BIA appealed Judge Reeh's order to the Board.

The Board determined that Judge Reeh correctly dismissed the petition for rehearing, but concluded Judge Tah-bone had misapplied the SRHLA. Consequently, pursuant to its authority under 43 C.F.R. §4.318, the Board modified Judge Tah-bone's decision by directing that

decedent's Indian trust or restricted real property on the Standing Rock Reservation be distributed to his three surviving half-siblings pursuant to section 3(a)(5) of the SRHLA rather than escheating to the tribe. Plaintiff appeals the Board's decision to this court.

## DECISION

Defendants seek a summary judgment. The summary judgment standard is well known and has been set forth by this court in numerous opinions. *See* Hanson v. North Star Mutual Insurance Co., 1999 DSD 34 ¶ 8, 71 F.Supp.2d 1007, 1009-1010 (D.S.D. 1999), Gardner v. Trip County, 1998 DSD 38 ¶ 8, 66 F.Supp.2d 1094, 1098 (D.S.D. 1998), Patterson Farm, Inc. v. City of Britton, 1998 DSD 34 ¶ 7, 22 F.Supp.2d 1085, 1088-89 (D.S.D. 1998), and Smith v. Horton Industries, 1998 DSD 26 ¶ 2, 17 F.Supp.2d 1094, 1095 (D.S.D. 1998). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995). In considering the motion for summary judgment, this Court must view the facts in the light most favorable to plaintiff and give plaintiff the benefit of all reasonable inferences that can be drawn from the facts. Donaho, 74 F.3d at 897-98.

The standard of review is defined by § 706 of the Administrative Procedures Act:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be--

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. §706.

Review here is under § 706(2)(A). As the Eighth Circuit has made clear, any agency's action is arbitrary and capricious when "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." In re Operation of Missouri River System Litigation 421 F.3d 618, 628 (8th Cir.2005). Moreover, "[i]f an agency's determination is supportable on any rational basis, [this court] must uphold it." Voyageurs Nat. Park Ass'n v. Norton, 381 F.3d 759, 763 (8th Cir. 2004) (citing Friends of Richard-Gebaur Airport v. FAA, 251 F.3d 1178, 1184 (8th Cir. 2001)).

## I. Reopening of Estate

Despite Judge Reeh's order dismissing the petition for rehearing, the decedent's probate matter could have been reopened by an administrative law judge or an Indian probate judge "within three years from the date of the final decision, after due notice on his or her own motion, or on petition of a BIA officer" to "prevent manifest error." 43 C.F.R. §4.242(e). The Board itself also had the authority to reopen the case to correct manifest error. *See* 43 C.F.R. §4.318. The Board, exercising its authority under 43 C.F.R. §4.318, elected to reopen the estate itself to modify Judge Tah-bone's Order of Modification.

Black's Law Dictionary defines manifest error as "An error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the

4

record." (8th ed. 2004). The whole basis of a probate proceeding is to distribute the decedent's property pursuant to the law governing such transactions. If the decedent's trust land on the Standing Rock Reservation was incorrectly distributed pursuant to Judge Tah-bone's order, this would certainly be tantamount to "manifest error." The Board's decision to reopen the decedent's estate was permitted and proper.

**II. Plaintiff's status as an "Indian" within the meaning of the SRHLA**

The Standing Rock Sioux Reservation Inheritance of Trust or Restricted Land act provides:

> Sec. 2. Only the Standing Rock Sioux Tribe of North Dakota and South Dakota (hereinafter the "tribe") or persons who are (a) enrolled members of the tribe, (b) members of a federally recognized Indian tribe, or (c) otherwise recognized as Indians by the Secretary of the Interior (hereinafter the " Secretary") shall be entitled to receive by devise or descent any interest in trust or restricted land within the boundaries of the reservation as defined by the Act of March 2, 1889 (25 Stat. 888), except as provided in section 4 of this Act.
>
> Sec. 3. (a) Whenever any Indian dies possessed of any interest in trust or restricted land within the reservation and the trust or restricted land has not been devised by a will approved by the Secretary pursuant to section 2 of the Act of June 25, 1910 (36 Stat. 856), as amended (25 U.S.C. 373) and which is consistent with the provisions of section 2 of this Act, such interest shall descend to the following persons, subject to their being eligible heirs pursuant to section 2 of this Act:
>
>> (1) one-half of the interest shall descend to the surviving spouse and the other one-half shall descend in equal shares to the children of the decedent and to the issue of any deceased child of the decedent by right of representation;
>> (2) if there is no surviving spouse, the interest shall descend in equal shares to the children of the decedent and to the issue of any deceased child of the decedent by right of representation;
>> (3) if there are no surviving children or issue of any child, the interest shall descend to the surviving spouse;
>> (4) if there is no surviving spouse and no surviving children or issue of any child, the interest shall descend to the surviving parents or parent of the decedent;
>> (5) if there is no surviving spouse, and no surviving children or issue of any child, and no surviving parent, the interest shall descend equally to the brothers and sisters of the decedent; and,
>> (6) if there is no surviving spouse, no surviving children or issue of any

5

child, no surviving parent, and no surviving brothers or sisters, the interest shall escheat to the tribe.

(b) Any interest which descends in accordance with this section shall be subject to the right of a non-Indian surviving spouse as provided in section 4(a) of this Act.

(c) As used in this section, the words "children" and "issue" include adopted children and children of unwed parents where the Secretary determines that paternity has been acknowledged or established, except that (1) a child may not inherit by intestate succession from or through a parent whose parental rights with respect to said child have been terminated pursuant to lawful authority and (2) a parent may not inherit by intestate succession from or through a child with respect to which such parent's parental rights have been so terminated.

Sec. 4. (a) Notwithstanding the provisions of section 2 of this Act, the non-Indian surviving spouse of an Indian decedent who dies possessed of any interest in trust or restricted lands within the reservation shall be entitled to take not more than an undivided one-half interest in all such trust or restricted lands during his or her lifetime, but the remainder of such interest shall descend as provided in section 3 of this Act.

(b) If a decedent has devised an interest in trust or restricted land located within the reservation to a person prohibited by section 2 from acquiring an interest in such trust or restricted land and the consequence of such prohibition is that the interest in land would escheat to the tribe pursuant to section 3(a)(6) of this Act, the devise shall be prohibited only if, while the estate is pending before the Secretary, the tribe pays to the Secretary on behalf of such devisee the fair market value of such interest as determined by the Secretary as of the date of the decedent's death. The value of any life estate reserved to a surviving spouse under the provisions of subsection (a) of this section shall be reflected in the Secretary's determination. The interest for which such payment is made by the tribe shall thereafter be held by the United States in trust for the tribe.

Sec. 5. The provisions of this Act shall apply only to estates of decedents whose deaths occur on or after the date of enactment of this Act.

PL 96-274, 94 Stat. 537 (June 17, 1980)

This Court has previously set forth the rules to be applied in interpreting statutes:

> "It is a basic rule of statutory interpretation . . . that a statute which is clear and unambiguous on its face is not subject to construction." *Northwest Paper Co. v. Federal Power Commission*, 344 F.2d 47, 50 (8th Cir. 1965), (citing *Blair v. City of Chicago*, 201 U.S. 400, 26 S.Ct. 427, 50 L.Ed. 801

(1906); *Kansas City, Missouri v. Federal Pacific Electric Co.*, 310 F.2d 271, 273, 274 (8th Cir. 1962), and 2 Sutherland, Statutory Construction, 334 § 4702 (3rd Ed. 1943)). "When the language of a statute is clear, certain, and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute." *American Meat Institute v. Barnett*, 64 F.Supp.2d 906, 915 (D.S.D. 1999), (quoting *South Dakota Subsequent Injury Fund v. Casualty Reciprocal Exchange*, 1999 SD 2, ¶ 17, 589 NW2d 206, 209 (1999), (quoting *Delano v. Petteys*, 94 SDO 700, 520 NW2d at 608), (quoting in turn *Petition of Famous Brands Inc.*, 347 NW2d at 884-85))).

\* \* \*

Canons of statutory construction, when properly applied, are useful tools but are only aids to judicial interpretation which should not be applied when there is no ambiguity. *United States v. Vig*, 167 F.3d 443, 448 (8th Cir. 1999).

> Unless exceptional circumstances dictate otherwise, when the terms of a statute are unambiguous, judicial inquiry is complete. *See In re Erickson Partnership*, 856 F.2d 1068, 1070 (8th Cir.1988). "We ask not what the Congress means; we ask only what the statute means." *United States v. Hepp*, 656 F.2d 350, 353 (8th Cir.1981); *see, e.g., Northern States Power Co. v. United States*, 73 F.3d 764, 766 (8th Cir.1996) (stating that when "statutes are straightforward and clear, legislative history and policy arguments are at best interesting, at worst distracting and misleading, and in neither case authoritative").

*United States v. Vig*, 167 F.3d at 448.

South Dakota Farm Bureau, Inc. v. Hazeltine, 2002 D.S.D. 13, ¶ 9, 202 F.Supp.2d 1020, 1026-27.

Here, the statute is clear. Only four classes of individuals are entitled to receive by devise or descent any interest in trust or restricted land within the boundaries of the reservation: (1) the Standing Rock Sioux Tribe, (2) persons who are enrolled members of the tribe, (3) members of another federally recognized Indian tribe, or (4) others recognized as Indians by the Secretary of the Interior. Both Judge Tah-bone and the Board determined that the plaintiff did not fall into one of these categories, and therefore, she was unable to take.

In its ruling, the Board noted that plaintiff did not appeal Judge Tah-bone's finding that she was not an eligible devisee. If plaintiff disagreed with Judge Tah-bone's finding that she was not an Indian who was eligible to take under the SHRLA, it was incumbent upon her to object to that finding to preserve it on appeal. She failed to do so. On this basis alone, the Board acted well within its discretion in taking this factor into account in affirming Judge Tah-bone's finding

7

that plaintiff did not qualify as one of the four classes of individuals who are eligible to take under the SRHLA. Such action can hardly be considered arbitrary or capricious

Second, even if the plaintiff had timely appealed her objection to Judge Tah-bone's finding, the Board noted that plaintiff failed to set forth any evidence that she is otherwise recognized as an Indian by the Secretary. Once again, the burden was on the plaintiff to present evidence that she was otherwise recognized as an Indian by the Secretary. She failed to do so. Despite the fact that Judge Herbert determined that plaintiff was an Indian who was eligible to take, the statute requires the Secretary of the Interior to make that determination, and the burden is on plaintiff to prove that she is eligible to take. The evidence plaintiff presented in setting forth her eligibility to take under the SRHLA was more than contradictory. Judge Tah-bone and the Board both found that plaintiff did not meet her burden in demonstrating that the Secretary of the Interior recognized her as an Indian. The Board's explanation for its decision does not run counter to the evidence before it; instead, it supports it.

Finally, it is worth noting that the SRHLA does not speak in terms of Indian descendancy in order to take; it speaks in terms of being an enrolled member of a federally recognized tribe. This language is clear and unambiguous. Despite the fact that plaintiff provided evidence of her Indian descendancy, Judge Tah-bone and the Board correctly applied the law in determining that, in order for plaintiff to take under the SRHLA, more is required than a showing of Indian descendancy. Perhaps Indian descendancy should be a factor to consider, but Congress' language is clear, and "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." U.S. v. White Plume, 447 F.3d 1067, 1075 (8th Cir. 2006) (quoting New Orleans v. Dukes, 427 U.S. 297, 303 (1976)).

Therefore, I do not find that the Board's actions were arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.

### III. Constitutionality of SRHLA

Plaintiff argues that the Bureau of Indian Affairs refusal to distribute the decedent's property as set forth in his will constitutes a taking of property without just compensation and a deprivation of property without due process of law. This argument is without merit. It is well-

established that testate or intestate rights of succession are statutory in nature and do not rise to the level of property rights. Irving Trust Co. v. Day, 314 U.S. 5565, 562 (1942). In addition, Congress has "broad authority to regulate the descent and devise of Indian trust lands" Hodel v. Irving, 481 U.S. 704, 712 (1987). It is true that in Hodel the Supreme Court held that, "complete abolition of both the descent and devise of a particular class of property may be a taking." Id. at 717. However, the statute in question here does not result in a total abolition of interests; it simply provides a system of distribution of trust land on the Standing Rock Indian Reservation if the decedent devises property to an ineligible individual. Plaintiff is an ineligible individual under the statute and her just compensation claim must fail.

In order to be able to assert a due process claim, plaintiff must "have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (U.S. 1972). In order to have had a legitimate claim of entitlement to the decedent's trust land on the Standing Rock Reservation, plaintiff would have had to have fallen within one of the classes of individuals eligible to take under the SRHLA. Regardless of plaintiff's descendancy, she did not and does not fall within this class of individuals articulated in the statute. She was not a member of the Standing Rock Sioux Tribe; she was not otherwise recognized by the Secretary; and she was not a member of another federally recognized Indian tribe. She cannot, therefore, be said to have a legitimate claim of entitlement to the land in question. Consequently, plaintiff's due process claim also fails.

Finally, even though federal law, the SRHLA, governs the distribution of the decedent's trust property, I think it is more than questionable whether plaintiff would be entitled to take under the will since she was no longer Defender's wife at the time of his death.

The plaintiff was a legal stranger to the decedent when he died. This is true under the laws of New Mexico, South Dakota, and North Dakota at all times pertinent to this case. Her only claim to inherit anything was based upon the will executed by the decedent before their divorce. The parties married under state law and were divorced under state law. The legal effect of the decree of divorce in New Mexico was to revoke a revocable disposition or appointment of property, namely the last will and testament of Mr. Defender. In other words, the moment the divorce decree was entered in New Mexico, the existing will became a nullity and was revoked.

*See, e.g.* SDCL 29A-2-804(b)(1). Plaintiff had no standing of any kind to present any claim against the Defender estate. Whether she was Indian or not, she was simply an interloper. It is surprising that no claim of lack of standing was ever raised or decided.

**ORDER**

Now, therefore,

IT IS ORDERED that the defendant's motion for summary judgment, Doc. 9, is granted. This matter is dismissed with prejudice and without costs.

Dated this 27th day of March 2010.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:

JOSEPH HAAS, CLERK

BY _____ DEPUTY
(SEAL)